IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

_____

IN THE MATTER OF THE CASWELL SILVER
FAMILY TRUST CREATED UNDER THE TERMS
OF THE CASWELL SILVER REVOCABLE TRUST
U/A DATED NOVEMBER 21, 1985, AS AMENDED;
THE CASWELL SILVER MARITAL TRUST
CREATED UNDER THE TERMS OF THE
CASWELL SILVER REVOCABLE TRUST U/A
DATED NOVEMBER 21, 1985, AS AMENDED; THE
CASWELL SILVER MARITAL GST EXEMPT
TRUST CREATED UNDER THE TERMS OF THE
CASWELL SILVER REVOCABLE TRUST U/A
DATED NOVEMBER 21, 1985, AS AMENDED; THE
ELIZABETH B. SILVER TRUST U/A DATED JUNE
26, 1989; THE ELIZABETH B. SILVER OIL TRUST
U/A DATED DECEMBER 28, 1989; and THE
ELIZABETH B. SILVER INSURANCE TRUST U/A
DATED DECEMBER 30, 1993.

Civ. No. 10-934 BB/DJS

MEMORANDUM OPINION

This matter is before the Court for consideration of a motion for partial summary

judgment [Doc. 31] and a motion to amend [Doc. 33] filed by parties having interests in the

trusts involved in this case ("Beneficiaries").[1]  Having reviewed all submissions of the parties

and the relevant law, the Court will deny both motions for the reasons discussed below.

**Nature of the Case and Procedural History**

Robert Allen Rikoon and Lawrence Steven Taub, Petitioners in this case ("Trustees"), are

co-trustees of several trusts created by Caswell or Elizabeth Silver.  Mr. Silver died in 1988, and

Mrs. Silver died on July 3, 2009, thus terminating the trusts and triggering the distribution of the

_____

[1]Movants refer to themselves as "Interested Parties" and the Court uses the term
"Beneficiaries" only for convenience.  The Court does not intend to suggest that any interested
party is, or is not, a beneficiary of any particular trust.

assets in those trusts.  Before distributing the assets to the beneficiaries, the Trustees either "requested" (Trustees' version) or "demanded" (Beneficiaries' version) that Beneficiaries sign release forms that included a release of all claims Beneficiaries might have against Trustees, arising out of the administration of the trusts.  This release form was similar to a release signed when the current Trustees replaced a prior trustee.  [Doc. 43, Attach. 5, Exh. A-4]  Trustees maintain they requested the release only to avoid the necessity of a judicial proceeding to approve their handling of the trusts; Beneficiaries claim the Trustees held the trust assets hostage to force Beneficiaries to release all claims, of any nature, which they might have against the Trustees.

After negotiations between the parties failed to resolve the impasse, Trustees filed suit in state court.  Beneficiaries removed the case to federal court on the basis of diversity jurisdiction.  Following removal, Magistrate Judge Garza held settlement proceedings and the parties reached a partial settlement.  Under this agreement, Trustees agreed to distribute most of the trust assets, retaining $216,000 to be dealt with by court order or further agreement of the parties.  [Doc. 30]  The only issues remaining to be resolved following this partial settlement are as follows:  (1) whether Trustees are entitled to a release of claims, and if so what should be the breadth of such a release; and (2) whether Trustees are entitled to use trust assets, such as a portion of the $216,000 kept in reserve, to pay the attorney's fees they have incurred in attempting to obtain the releases of claims and in filing and litigating the instant lawsuit.  [*Id.*]

Approximately a month after the settlement, in March 2011, Beneficiaries filed a motion for summary judgment directed at the above two questions.  In addition, Beneficiaries filed a motion to amend their answer and counterclaims.  Beneficiaries allege that on March 16, 2011, they learned that the Trustees had negligently provided estate-planning services to Elizabeth Silver during the years 1994 through the date of her death.  Beneficiaries wish to add a

negligence claim against Trustees and establish new pretrial deadlines for the entire case.  The Court will address the summary-judgment motion first, and then the motion to amend.

### Motion for Summary Judgment

Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Medina v. Income Support Div.*,  413 F.3d 1131, 1133 (10th Cir. 2005) (quoting Fed. R. Civ. P. 56(c)).  In response, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial."  *Matsushita Elec. Indus. Co. v. Zenith*, 475 U.S. 574, 587-88 (1986).  To avoid summary judgment, the non-moving party may not rest upon the mere allegations in the pleadings but must show, at a minimum, an inference of the existence of each essential element of the case.  *Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1016-17 (10th Cir. 2001) (citing *Hulsey v. K-Mart, Inc.*, 43 F.3d 555, 557 (10th Cir. 1994)). When viewing the evidence, the Court must draw reasonable inferences in favor of the non-moving party. *Matsushita*, 475 U.S. at 587.  The Court will address the Beneficiaries' motion with this standard in mind.

### Releases and Delayed Distribution of Assets:  As noted above, the first question to be addressed in this summary-judgment proceeding is whether, as a matter of law or undisputed fact, Trustees lacked authority to delay distribution of the trust assets as they did.  Trustees argue that in situations involving trusts of considerable value, such as the approximately $9 million combined value of the trusts at stake in this case, it is accepted practice to delay distribution of at least a portion of the assets, pending receipt of a "closing letter" from the Internal Revenue Service.  [Doc. 43, Attach. 1, p. 3]  They also contend the release documents are customary in trust matters, and they were merely attempting to avoid the expense and delay involved in

3

obtaining court approval of their actions as Trustees.  [*Id.* pp. 2-4]  Beneficiaries, on the other hand, maintain there was no reason for Trustees to hold back a "reserve" fund, as Trustees would not have been personally responsible for any tax liability that might have arisen.  [Doc. 46, p. 5] They also vigorously argue that Trustees demanded a general release of all possible claims Beneficiaries might have had against them, not just a release as to the Trustees' accounting. According to Beneficiaries, judicial intervention was not required as to the accounting, because none of the Beneficiaries had raised any dispute with the accounting that had been provided. Therefore, conclude Beneficiaries, there was no reason for Trustees to file this lawsuit or to demand releases prior to distributing the trust assets.  [*Id.*, *passim*]

Neither party has cited persuasive law that is directly on point.  Beneficiaries did cite an Oregon Court of Appeals case which stated that under the circumstances of that case, it was unreasonable for the trustee to insist that the beneficiaries sign releases.  The trustee in that case had paid trustees' fees to himself to which he was not entitled under the terms of the trust, and then demanded the releases from the beneficiaries.  *See Masters v. Bissett*, 790 P.2d 16, 23 (Or. App. 1990).  The statement in *Bissett* is a far cry from saying that requesting any release prior to distribution is inappropriate as a matter of law in every case.  Furthermore, the *Bissett* case contains a singular lack of citation to any other authority and should be limited to the facts discussed in the case.

The Court's own review of trust law reveals the following principles that appear to be applicable to the situation at hand.  On the one hand, a trustee is clearly entitled to withhold at least some assets during the windup period, in order to pay expenses such as taxes that might be owed, as well as trustee fees and expenses.  NMSA § 46A-8-817(B) (when trust terminates, trustee's duty to expeditiously distribute the trust property is "subject to the right of the trustee to retain a reasonable reserve for the payment of debts, expenses and taxes."); *see also Restatement*

4

*(3d) Trusts*, § 38, General Comment b; *Id.*, § 89, Comments c and e; *Restatement (2d) Trusts*, § 345, Comment e.  On the other hand, depending on the circumstances a trustee may not be justified in delaying distribution of the entire trust estate, but even prior to the final accounting may have a duty to distribute a portion of the estate.  *See Restatement (3d) Trusts*, § 89, Comment e; *Restatement (2d) Trusts,* § 345, Comment e.  Also, a trustee is entitled to pursue court approval of a final accounting, unless such court approval is waived by the beneficiaries. *See Restatement (3d) Trusts*, § 89, Comment c; *Restatement (2d) Trusts*, § 345, Comment e.

　　In order to determine the propriety of the Trustees' actions in this matter, the Court requires further information that has not yet been presented at this summary-judgment stage. Trustees have provided an explanation for their delay in distributing the assets and for their request for a release.  However, even if that explanation is accepted, Trustees may not have been justified in withholding the entire trust estate while they were attempting to wind up the affairs of the trusts.  It also appears the release form originally proposed by Trustees may have been overly broad, as it purported to release any claims a party "now has or ... may have" against Trustees, despite the fact a New Mexico statute specifically invalidates a release of claims if a beneficiary currently has no knowledge of the facts supporting certain claims.  *See* NMSA § 46A-8-817(C)(2); Doc. 46, Exh. I-4, Release p. 2.  Beneficiaries, for their part, categorically deny that Trustees had any right to a release or to withhold any part of the estate.  As noted above, however, Trustees are entitled to either court approval of their accounting or to a waiver of same by Beneficiaries (presumably through a release).[2]  It appears then, Trustees were also likely entitled to withhold at least part of the estate as a reserve, both for taxes and for their fees

---

[2]The Court recognizes Beneficiaries' contention that the final accounting was never an issue and so did not justify the demand for a release; the Court notes, however, that Trustees claim their accounting was not approved by Beneficiaries, which meant they were not paid the trustees' fees they had earned.  [Doc. 43, Attach. 1]

as well as (possibly) their attorney's fees, should the same be found chargeable to the trusts.[3]  In sum, the circumstances surrounding who demanded what, who refused to do what, and who was entitled to do what, are too murky and confused to be amenable to summary judgment.  This is especially true since the issues involved in this case concern a trust, which requires the Court to exercise its equitable powers; this is a somewhat difficult proposition when the only information available to the Court is from the cold pages of the summary-judgment record.  *See Restatement (2d) Trusts*, § 197 (remedies available to trust beneficiaries are almost exclusively equitable).

**Entitlement to Attorney's Fees Paid By Trust:**  This is the second issue left to resolve in this case – whether Trustees are entitled to use any of the $216,000 kept in reserve, to pay the attorney's fees they have incurred both in attempting to obtain releases from the Beneficiaries and in litigating this case.  In some part, resolution of this issue may depend on how the question discussed above is decided; if the Court finds Trustees' actions were at least somewhat justified, reimbursement for part or all of the attorney's fees they have incurred would be appropriate.  For example, where a trustee is forced to hire an attorney to defend his actions as trustee, the trustee is normally entitled to payment of his attorney's fees if he can prove his actions were appropriate.  *See* NMSA 46A-7-709; *Restatement (3d) Trusts*, § 88, Comment d (placing the matter in the trial court's discretion).  In particular, now that this matter has been placed before the Court for decision, the Court has broad discretion to determine whether or not any party is entitled to attorney's fees.  *See* NMSA 46-10-1004 (in any judicial proceeding involving administration of a trust, the court may award fees and expenses, including reasonable attorney's

---

[3]Again, the Court notes Beneficiaries' argument that no funds needed to be reserved for taxes, because Trustees would not be held liable for any taxes that might be found due and owing.  That is not the point, at least as the Court understands it; according to the Restatement, Trustees had a responsibility to ensure the trusts, not they themselves, were clear of obligation to any taxing authority.

fees, as justice and equity may require); *Garwood v. Garwood*, 233 P.3d 977, 985 (Wyo. 2010) (construing Wyoming statute identical to § 46-10-1004); *Klinkerfuss v. Cronin*, 289 S.W.3d 607, 617 (Mo. App. 2009) (same, with respect to Missouri).  Although the Court need not decide the question at this time, it appears NMSA 46-10-1004 would grant the Court authority to award attorney's fees to any party, payable by any party or by the trust, as might be just and equitable, and the Court will not be limited by a simple determination as to who should prevail on the merits.  At this point, however, it is simply not appropriate to exercise that discretion on summary judgment.

### Motion to Amend Answer and Counterclaim

As discussed above, following the settlement conference in front of the Magistrate Judge and the partial settlement resulting from that conference, Beneficiaries moved to amend their answer and counterclaim in order to add another counterclaim.  This counterclaim alleges that Trustees committed professional negligence in providing estate-planning advice to Elizabeth Silver.  The counterclaim therefore is not an equitable cause of action, unlike the breach-of-trust counterclaim raised in the original responsive pleadings.

Resolution of the motion to amend requires the Court to apply competing legal principles.  As Beneficiaries argue, allowing parties to resolve all pending issues, whether they are related in fact or law or not, can advance the cause of judicial economy.  *See Keith v. Volpe*, 858 F.2d 467, 473 (9th Cir. 1988) (Federal Rule 15, allowing amendments to pleadings, "is a tool of judicial economy and convenience" and its use is therefore favored).  Also, when a party seeks to amend a pleading under Rule 15, such leave should be freely granted.  *See Smith v. Aztec Well Servicing Co.,* 462 F.3d 1274 (10th Cir. 2006).  However, leave to amend may be denied where the amendment will unduly complicate the pending case.  *See, e.g., FHF Partners v. KMA Financial Group, LLC,* 2007 WL 710287 (E.D. Pa. 2007, unpublished) (denying motion

to amend to add legal malpractice claim); 6 Charles Alan Wright, Arthur R. Miller & Mary Kay

Kane, *Federal Practice and Procedure* § 1487 (where issues raised in the proposed amendment

would unduly complicate the issues, denial may be appropriate).

      In addition, a settlement reached by the parties should not be lightly undone. *See, e.g.,*

*Wysocki v. Int'l Business Machine Corp.,* 607 F.3d 1102, 1108 (6th Cir. 2010) (due to strong

public policy in favor of encouraging the resolution of disputes, courts will interpret releases to

further that policy). In this case, the parties reached a partial settlement of the underlying

dispute, leaving only two issues to be resolved by this Court. Trustees compromised the fees

they thought were owed them, in order to facilitate the settlement. [Doc. 43, Exh. A, p.6]

Shortly thereafter, Beneficiaries claim to have discovered a new cause of action against Trustees,

which is not factually related to the two issues left unresolved by the settlement.

      Beneficiaries want to open up the case to new litigation, with a new scheduling order put

in place. The Court declines to do so, for several reasons. First, the issues left unresolved by the

settlement can easily be disposed of by the Court following a short trial on the merits, and the

parties can thereby be given the benefits of the bargain they reached before Magistrate Judge

Garza. There is no need to complicate and delay this resolution any further by introducing into

the mix the new counterclaim advocated by Beneficiaries. Second, the Court can discern little

prejudice to Beneficiaries by requiring them to file a new lawsuit rather than litigating their

proposed new counterclaim in this action. Beneficiaries are able to afford the cost of a new

filing fee, should have no difficulty locating Trustees in order to serve them with process, and

will face no new laches or statute-of-limitations defenses than they are already facing in this

case. Finally, even Beneficiaries admit that a significant aspect of the damages allegedly caused

by Trustees' actions has not occurred yet, and may not occur at all.  [Doc. 41, p. 9][4]  This fact raises potential issues of ripeness, at least as to damages, that risk complicating matters even further.  In sum, the remainder of the settled case is ready to be resolved in short order, and the Court declines to permit a complication or delay of that resolution simply to allow Beneficiaries to litigate a new and very different cause of action against Trustees.

**Conclusion**

Pursuant to the foregoing, the motion for summary judgment and the motion to amend will both be denied.

Dated this 5th day of January, 2012.

BRUCE D. BLACK
UNITED STATES DISTRICT JUDGE

---

[4]This is because other heirs of Elizabeth Silver may or may not challenge certain gifts from Elizabeth Silver to Anne Silver and Sue S. Harivandi, but had not done so at the time the reply brief was written.  [*Id.*]  Absent such a challenge, potential damages to Beneficiaries would apparently be considerably lessened.

9